IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                      Criminal No. 3:13MJ196

TRAVIS MASON SHERRY,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANT'S MOTION TO DISMISS PETITION ON PROBATION FOR LACK OF JURISDICTION (ECF No. 21) ("Def. Mot."). For the reasons set forth below, the Defendant's Motion will be granted and the Petition on Probation will be dismissed.

**BACKGROUND**

The relevant facts in this matter are not in dispute. On January 14, 2013, Travis Mason Sherry was convicted of Driving Under the Influence of Alcohol in the Eastern District of North Carolina and was sentenced to a fourteen-month term of probation. On May 6, 2013, Sherry's term of probation was extended an additional twenty-two months after he committed violations of the conditions of his supervision, and jurisdiction over his probation was transferred to the Eastern

District of Virginia shortly thereafter.[1] As extended, Sherry's term of probation was set to expire on January 13, 2016.

On June 26, 2015, Sherry allegedly threatened and brandished a firearm against two of his neighbors. The officers who responded to the scene testified that Sherry appeared intoxicated. The same officers also testified that a gun matching the description given by the neighbors was found in Sherry's residence. Sherry did not report this contact with law enforcement to his probation officer as required by the conditions of his probation, and, when eventually confronted by the probation officer on December 1, 2015, he denied brandishing or otherwise displaying any firearms. The probation officer advised Sherry that an investigation into the matter would be conducted, and that he could face legal consequences if his version of the events proved untrue.

On December 18, 2015, after obtaining a copy of the police report from the June 2015 incident that contradicted Sherry's narrative, the probation officer submitted a Petition on Probation (ECF No. 7). It was approved by the Court and filed on December 28, 2015. The same day, a warrant was issued for

---

[1] The parties assert that this transfer of jurisdiction occurred in late August, 2013. See Def. Mot. at 2; Gov. Supp. at 1. But Court records reflect that jurisdiction was accepted on June 7, 2013. (ECF No. 6). In any event, there is no dispute that Sherry was under the probation jurisdiction of the Eastern District of Virginia from September of 2013 until January of 2016.

2

Sherry's arrest; but, because the United States Marshals Service (USMS) "policy is to not enter misdemeanor warrants into NCIC,[2] and such warrants are of lower priority . . . USMS did not attempt to serve Defendant." (Gov. Resp. 2, n. 1); see also Tr. Evid. Hrg. of April 17, 12:18-13:5 (Proffer).

Meanwhile, and apparently in accordance with a nationwide office protocol, the probation office placed Sherry's file into "inactive status" because the warrant had been issued. Id. at 6:22-24 ("Our office protocol is once a warrant is issued, the case is placed in inactive status, notification is made to the marshals, and we await execution of the warrant."). Because Sherry's case was "inactive," the probation office did not further communicate with him or otherwise advise him that a warrant had been issued. Id. at 6:17-20. The probation officer did, however, alert USMS that Sherry was thought to be a poor candidate for self-surrender, and further explained that he might pose a safety concern to any USMS officers executing the warrant. Id. at 4:9-5:1. USMS did not ask Sherry to surrender on the warrant or attempt to arrest him. Id. at 13:10-14. Under the circumstances, the Court cannot find that Sherry was even aware of the outstanding warrant.

---

[2] Since 1967, the National Crime Information Center (NCIC) has been the United States' central database for tracking crime-related information.

3

On March 20, 2017, nearly fifteen months later, Sherry was arrested in Henrico County on a new, separate charge of brandishing a firearm. Meanwhile, USMS had "reviewed its database" in February of 2017 and decided to enter the original warrant into NCIC.[3] That warrant then served as a federal detainer; and, therefore, after being released on bond in state court on March 30, Sherry was transferred into federal custody in response to the outstanding warrant. He then made his initial appearance in this Court and was detained pending trial on the Petition on Probation that had been filed on December 28, 2015. The probation office also issued an Addendum to its original Petition on Probation that added the new brandishing charge. (ECF No. 9).

Sherry made his initial appearance before Magistrate Judge Young on the Petition on Probation and the Addendum on April 3, 2017. The detention hearing was held that day, and Sherry was detained pending trial on the charges in the Petition on Probation and the Addendum. Sherry appealed the detention order, and the Court heard his appeal on April 3, 2017. See ECF No. 16. At the hearing on the appeal of the detention order, Sherry for the first time raised his jurisdictional arguments.

---

[3] The proffer from USMS stated that this decision was based on a review of the June, 2015 incident and evidence that at least one similar incident had occurred in the interim. (Tr. Evid. Hrg. of April 27, 12:23-13:3).

4

See ECF Nos. 18, 20. Sherry moved to dismiss both the Petition on Probation and the Addendum on the ground that Sherry's probation had expired in January of 2016, and that, under 18 U.S.C. § 3565, the Court therefore lacked subject-matter jurisdiction to adjudicate either. (ECF No. 18). The Court ordered expedited briefing on the matter. Id.

On April 4, 2017, Sherry filed DEFENDANT'S MOTION TO DISMISS PETITION ON PROBATION FOR LACK OF JURISDICTION ("Def. Mot.") (ECF No. 22). The next day the UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS ("Gov. Resp.") (ECF No. 23) was filed, asserting for the first time that the Court retained jurisdiction over Sherry as a consequence of the so-called "fugitive tolling" doctrine. Supplemental briefing was ordered. (ECF No. 24). Following the additional briefing and an evidentiary hearing, argument was heard on the motion on April 27, 2017. (ECF No. 26). The matter is now ripe for adjudication.

### FUGITIVE TOLLING AND 18 U.S.C. § 3565(c)

Fugitive tolling is a judicially-created doctrine based on the uncontroversial premise that a defendant "should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release." United States v. Murguia-Oliveros, 421 F.3d 951, 954 (9th Cir. 2005); see also United

5

States v. Workman, 617 F.2d 48, 51 (4th Cir. 1980) ("[A] probationer cannot obtain credit against the [probationary period] for any period of time during which he was not, in fact, under probationary supervision by virtue of his own wrongful act.").[4] Where applicable, fugitive tolling "operates to stop the clock" of probation, and the clock does not resume ticking until "federal authorities are capable of resuming supervision." United States v. Buchanan, 638 F.3d 448, 457 (4th Cir. 2011) (internal citation omitted).

As its name implies, fugitive tolling is applied most regularly where a "defendant absconds while on supervised release" or probation, thereby becoming a fugitive from justice. Id. In such circumstances, the doctrine preserves the time that the defendant has remaining on his term until he returns to federal custody (either through surrender or arrest). Only then will the clock resume on the period of probation or supervised release. Id.

Although some circuits have rejected fugitive tolling as unnecessary or even contrary to the statutes governing supervised release and probation, see United States v. Hernandez-Ferrer, 599 F.3d 63, 64 (1st Cir. 2010), the Fourth

---

[4] Fugitive tolling has been deployed equally in cases involving terms of probation as well as supervised release. Because the Fourth Circuit has treated the two contexts as analogous in this area, see Buchanan, 638 F.3d at 452, the Court will treat them as such herein.

Circuit has followed the Ninth Circuit in adopting the doctrine. Buchanan, 638 F.3d at 455 ("[W]e agree with . . . the Ninth Circuit and hold that a term of supervised release is tolled when a defendant absconds from supervision."). In doing so, however, the Fourth Circuit appears to have acknowledged that the doctrine is of limited utility, conceding that "tolling is unnecessary to avoid allowing a defendant to benefit from absconding . . . in cases where a petition or summons is filed before the expiration of the supervised release term." Id. at 455, n. 7.[5] That, of course, is quite sensible: in those cases where a petition and warrant are filed before the expiration of the term of probation, Congress has already provided a statutory mechanism that accomplishes the same objectives as does the fugitive tolling doctrine.

Section 3565(c) of Title 18 governs the Court's power to revoke a term of probation after that term has expired. In relevant part, it instructs:

> The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period *reasonably necessary* for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

---

[5] The Buchanan court wrote that the First Circuit's position "may have merit" in such cases. Id.

7

18 U.S.C. § 3565(c)(emphasis added). Thus, so long as any delay in bringing the defendant into custody is "reasonably necessary," the Court is not precluded from exercising jurisdiction over any alleged violations of probation (provided that the warrant was issued during the term). And, because any delay attributable to the defendant's own "own wrongful act" would also be considered "reasonably necessary" under § 3565(c), fugitive tolling has little, if any, utility in circumstances where 18 U.S.C. § 3565(c) would apply. In such circumstances, applying fugitive tolling is at best duplicative. At worst, it may lead to rulings contrary to the statute.[6]

The possibility that fugitive tolling could be used to subvert Congressional purpose is troubling; however, it is for the Fourth Circuit to determine whether fugitive tolling is ever appropriate in circumstances where § 3565(c) would otherwise apply. That question need not be answered here, as it is clear that neither the fugitive tolling doctrine nor the statute are satisfied on the facts of this case. Because the Court finds that fugitive tolling is inapplicable and that the requirements of § 3565(c) have not been met, Sherry's motion to dismiss will be granted.

---

[6] If a Court were to conclude that § 3565(c) precludes jurisdiction but that fugitive tolling applied, it could result in the exercise of jurisdiction in circumstances expressly considered and rejected by Congress.

## ANALYSIS

The evidence in this case reveals that the delay between the issuance of the warrant on December 28, 2015 and its execution on March 30, 2017 was neither "reasonably necessary," see 18 U.S.C. § 3565(c), nor attributable to Sherry's "own wrongful act." Workman, 617 F.2d at 51. First, the warrant issued against Sherry on December 28, 2015 was based on a misdemeanor offense and therefore, (apparently by agency policy), it was deemed "lower priority" and thus was not entered into NCIC, even though the probation officer advised USMS that Sherry could pose a threat to officer safety. In any event, no attempt was made to execute the warrant even though Sherry resided at the same known address throughout the period. Moreover, neither USMS nor the probation office ever contacted Sherry to direct him to self-surrender or to otherwise notify him that a warrant had been issued. Indeed, owing to the "inactive" status of his case, the probation office had no contact of any kind with Sherry after the December 1, 2015 in-person meeting, even after he failed to submit his final monthly report (due January 5, 2016). On this record, the Court cannot find that Sherry was ever aware of the outstanding warrant; and, therefore, the Government's reliance on the fugitive tolling doctrine is misplaced.

Admittedly, the language in the "fugitive tolling" cases relied upon by the Government is quite broad. The Ninth Circuit, most notably, has repeatedly held that "[a] defendant is in fugitive status when he fails to comply with the terms of his supervised release." United States v. Watson, 633 F.3d 929, 931 (9th Cir. 2011). That court has also suggested that "[a] defendant's failure to properly report to a supervising officer may also demonstrate the defendant's fugitive status." United States v. Grant, 727 F.3d 928, 931 (9th Cir. 2013). Relying upon this language, the Government advances alternate theories as to why Sherry's probation should be tolled: first, using language from Workman, the Government argues that the arrest warrant (which it notes was issued because of Sherry's "own wrongful act") must toll the probation clock until the warrant's execution; alternatively, the Government asserts that Sherry's failure to submit his final written report by January 5, 2015 triggers the doctrine. Neither theory is persuasive.

First, the Government misunderstands the type of wrongful conduct necessary to trigger fugitive tolling. When the Workman court alluded to the defendant's "own wrongful act," it was referring to the acts that would prevent *execution* of the warrant—not the acts leading to the warrant's *issuance*. See id. at. 51 ("To state the obvious, the attempted interruption of his probation by revocation was not a voluntary act on his part.").

While in some cases (*i.e.*, true fugitive cases) the same wrongful act may explain both why a warrant was issued and why there was a delay in its execution, the focus of the tolling doctrine must be on the latter—the reason for the delay in bringing the defendant to court. And, while it is true that Sherry's alleged probation violation (brandishing a firearm) was responsible for the warrant issued for his arrest, it is not, as the Government admits,[7] the reason for the delay in bringing him before the Court. Thus, it cannot serve as the basis for fugitive tolling.

The Government's arguments suffer further from divorcing the Ninth Circuit's broad language from the factual circumstances in which that language was uttered. In doing so, the Government ignores that even the most aggressive interpretations of tolling so far advanced by the Ninth Circuit would not cover Sherry's case. In Grant, perhaps the case most relied upon by the Government, the defendant changed her permanent address without telling the probation office or otherwise notifying authorities—thereby preventing the execution of any warrant against her "until she was found and arrested by federal authorities." 727 F.3d at 930-31. Indeed, the probation

---

[7] In its brief, the Government asserts the delay was caused by the probation officer's "reasonable apprehension of Defendant's reaction to the pending arrest warrant[] and the Marshal Service's polices related to prioritizing felony warrants and other operations over misdemeanors." (Gov. Resp. 7).

11

officer in Grant had attempted to contact the defendant several times at home and only found out she had "absconded from supervision" from one of the defendant's former neighbors. Id. By contrast, Sherry's probation officer made no attempts to contact him after the warrant was issued, and Sherry continued to reside at the same known address for the entire period in question. The Government cited, and the Court located, no case in which fugitive tolling has been applied in circumstances such as presented by the record here.[8]

Finally, the Government's interpretation of fugitive tolling is contrary to the intent of Congress as expressed in 18 U.S.C. § 3565(c). That statute permits adjudication of probation violations for any period of time "reasonably necessary" beyond the expiration of the probation term. The Government's theory would, using a judicially created doctrine, render that entire provision meaningless. If accepted, it would permit courts to exercise jurisdiction long after the original date on which supervision or probation was set to expire, and do so without any inquiry into whether the delay was necessary or reasonable.

---

[8] The Government also relies on United States v. Bristow, a district court case from the Southern District of California and likely the most aggressive application of fugitive tolling yet. 2007 WL 2345037 (S.D. Cal. Aug. 16, 2007). But, even in that case, the probation office took the minimal step of "inform[ing] Defendant that he had an active federal warrant for his arrest and direct[ing] Defendant to turn himself in." Id. at *1. The Defendant promised to comply but did not do so, and was therefore treated as a fugitive. Id.

While the law rightly places the burden on the defendant to stay in compliance with the conditions of his probation, a line must be drawn at some point. As it happens, Congress drew that line when it drafted 18 U.S.C. § 3565(c). The Court cannot frustrate that decision now by deploying the exaggerated concept of fugitive tolling urged by the Government.

Section 3565(c) required only that any delay in Sherry's prosecution be "reasonably necessary for the adjudication of matters" arising before the expiration of his probation. 18 U.S.C. § 3565(c). Because the delay in this case cannot credibly be described in those terms, the Court must grant the motion and dismiss the Petition on Probation.

## CONCLUSION

For the reasons set forth above, the DEFENDANT'S MOTION TO DISMISS PETITION ON PROBATION FOR LACK OF JURISDICTION (ECF No. 21) will be granted.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 5, 2017